UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| JENNIFER DEAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:22-cv-225 |
| ) | |
| TOWN OF HARTFORD, VERMONT and ) | |
| BRETT MAYFIELD, in his individual ) | |
| capacity, ) | |
| ) | |
| Defendants. ) | |

**AMENDED SUPPLEMENTAL ORDER ON MOTION FOR SUMMARY JUDGMENT**
**(Doc. 57)**

This is a civil rights action arising from a rental housing inspection and Emergency Health Order issued in May 2022. In an Amended Opinion and Order dated March 31, 2025—familiarity with which is presumed—the court denied defendant Brett Mayfield's summary judgment motion and denied plaintiff Jennifer Dean's motion for partial summary judgment. The court granted the Town of Hartford's motion for summary judgment as to the state-law claims in Count III and as to the federal *Monell* claims against the Town under 42 U.S.C. § 1983 in Counts I and II. The court reserved ruling on the state-law claims against the Town in Counts I and II pending further briefing. (Doc. 116.) The parties filed supplemental memoranda on May 12, 2025. (Docs. 122, 123.)

In support of her *Monell* claims against the Town, Plaintiff argued that "the Town had a customary practice of not issuing health orders [under 18 V.S.A. § 126] and also not reviewing or conducting hearings on Emergency Health Orders [under 18 V.S.A. § 127]." (Doc. 81 at 3.) The court concluded that the Town was entitled to summary judgment on the *Monell* claims, reasoning that "even accepting that the Town had a practice or custom of relying on the § 127

process, Vermont law expressly authorizes EHOs under that process" and that "there is no evidence that such 'facially lawful' action *caused* Mr. Mayfield to engage in misconduct." (Doc. 116 at 12 (emphasis added).) The court concluded that there was "no evidence of a Town policy or custom that *resulted in* the alleged deprivation of Plaintiff's rights under the Fourth Amendment (Count II) or under the Due Process Clause of the Fourteenth Amendment (Count I)." (*Id.* at 13 (emphasis added).) As the emphasized text indicates, the court concluded that Plaintiff could not establish the required causation element on the *Monell* claims. (*Id.* at 12 n.16.)

In addition to the federal claims against the Town in Counts I and II (on which the Town obtained summary judgment in its favor), Plaintiff asserts analogous state-law claims in those counts under Articles 4 and 11 of the Vermont Constitution. (Doc. 1 ¶¶ 33–36, 37–41.) The court sought additional briefing from the parties regarding whether, as relevant to the issues in this case, Articles 4 and 11 should be interpreted the same way as the Due Process Clause and the Fourteenth Amendment. (Doc. 116 at 14.) The Town asserts that the proximate cause requirement is the same under *Monell* and under Vermont law, and that there is no evidence of any Town conduct that proximately caused Plaintiff's injuries. (Doc. 122 at 2–4.) The Town further contends that, even if a town could be vicariously liable under the Vermont Constitution for a town employee's tortious conduct, Mr. Mayfield was not a Town employee and should not be deemed a Town employee. (*Id.* at 4–6.)

I. **Causation**

The court begins with the question of causation. In the context of § 1983 claims, a plaintiff must show "that the defendant's alleged misconduct was both the 'but for' cause and the proximate cause of his injury." *Arnold v. Geary*, 582 F. App'x 42, 43 (2d Cir. 2014) (summary

order); *see also Zullo v. State*, 2019 VT 1, ¶ 70, 209 Vt. 298, 205 A.3d 466 ("As the Second Circuit reasoned in *Townes* [*v. City of New York*, 176 F.3d 138 (2d Cir. 1999)], § 1983 actions alleging constitutional torts are analogous to common law actions aimed at compensation, and thus they generally employ the principle of proximate cause to determine damages."). Vermont courts apply the same or similar causation requirements in cases seeking to hold municipalities liable for state constitutional torts. *See In re Town Highway No. 20*, 2012 VT 17, ¶ 51, 191 Vt. 231, 45 A.3d 54 (upon proof of actual injury, plaintiff alleging a state constitutional tort could potentially recover damages for emotional distress "resulting from" town selectboard's long course of alleged misconduct); *see also Cornelius v. City of Newport*, No. 225-8-19 Oscv, 2023 WL 6444656, at *5 n.2 (Vt. Super. Ct. Sept. 22, 2023) (Richardson, J.) (applying *Townes* and limiting scope of damages for city police officers' alleged Article 11 violations due to absence of a "proximate[] relat[ionship]").

It makes sense that a constitutional tort, like torts in general, would include a causation element. But the parties dispute the nature of the causation element for purposes of the claims under Articles 4 and 11. The Town asserts that—as with the § 1983 claims—"there is no Town policy or custom that had any causal relationship to Mr. Mayfield's alleged conduct" for purposes of the claims under Articles 4 and 11. (Doc. 122 at 3.) Plaintiff argues that her Vermont constitutional tort claims against the Town do not require such a municipal policy or custom. She maintains that "[a] municipality can be liable for Vermont Constitutional tort claims without there being a policy or custom that caused the violation." (Doc. 123 at 2.)

In a § 1983 action, a plaintiff cannot hold a municipality liable on a vicarious liability theory. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."); *Littlejohn v. City of New York*,

3

795 F.3d 297, 314 (2d Cir. 2015). Thus, "[t]o impose liability on a municipality under § 1983, a plaintiff must identify a municipal policy or custom that caused the plaintiff's injury." *Newton v. City of New York*, 779 F.3d 140, 152 (2d Cir. 2015) (internal quotation marks omitted); *see also Monell*, 436 U.S. at 694. But the same prohibition on vicarious liability is not present for Vermont constitutional tort claims, at least where the defendant is the State of Vermont. *See Zullo*, 2019 VT 1, ¶ 31 (reasoning that constitutional tort claim against the State based on vicarious rather than direct liability was "consistent with the legislative policy"; and that "the State is appropriately held answerable for the acts of its officers and employees because it can avoid such misconduct by adequate training and supervision and avoid its repetition by discharging or disciplining negligent or incompetent employees").

Of course, the State of Vermont is not a defendant in this case. However, the *Zullo* Court favorably cited *Bosh v. Cherokee County Building Authority*, 2013 OK 9, ¶ 32, 305 P.3d 994. And the Supreme Court of Oklahoma in that case held that respondeat superior applied in that constitutional tort action "to hold municipal corporations liable for the actions of their employees where those employees are acting within the scope of their employment." *Id.* Similarly, the Vermont Supreme Court in *In re Town Highway No. 20* recognized that Vermont state law required the plaintiff to sue the Town of Georgia for the acts of the town's officers that allegedly violated Article 7 of the Vermont Constitution. 2012 VT 17, ¶ 54 n.7 (citing 24 V.S.A. § 901(a)).[1] The court therefore agrees with Plaintiff that she need not prove that a municipal

---

[1] Section 901(a) provides:

> Where an action is given to any appointed or elected municipal officer or town school district officer, the action shall be brought in the name of the town in which the officer serves and in the case of a town school district officer in the name of the town school district. If the action is given against such officers, it shall be brought against such town or town school district, as the case may be.

4

"policy or custom" caused her alleged injuries for purposes of her claims under Articles 4 and 11.

The court previously concluded that, as against Mr. Mayfield, the claims under Articles 4 and 11 survived his motion for summary judgment. (Doc. 116 at 29.) That motion did not mention 24 V.S.A. § 901(a) and the court's analysis did not address that statute. If Mr. Mayfield is a Town officer, then § 901(a) would presumably apply. Similar to *In re Town Highway No. 20*—and even without facts to prove any municipal "policy" or "custom"—that would make the Town the proper defendant for Mr. Mayfield's alleged constitutional torts. The court considers that potential avenue of vicarious liability next.

## II.   Vicarious Liability for Mr. Mayfield's Conduct

The Town insists that "there is no evidence of conduct of any sort on the part of the Town that caused Mr. Mayfield's conduct." (Doc. 122 at 4.) Even if so, § 901(a) would make the Town the proper defendant for alleged harm caused by Mr. Mayfield while acting in the course of Town employment. That leads to the Town's argument that, in his capacity as a Local Health Officer (LHO),[2] Mr. Mayfield was not a Town of Hartford employee. (Doc. 122 at 4–6.) If Mr. Mayfield, as LHO, was not (and could not be deemed) a Town officer, then § 901(a) would not apply and there would be no other basis for the Town to be vicariously liable for Mr. Mayfield's alleged Article 4 and 11 violations.

The parties previously supplied briefing as to whether, for purposes of Eleventh Amendment immunity to the § 1983 claims, Mr. Mayfield, as the LHO for the Town, is an "arm" of the State of Vermont. (*See* Doc. 57 at 4–8; Doc. 65 at 15.) The court did not reach that issue

---

[2] Section 601 of Title 18 of the Vermont Statutes Annotated describes the appointment of local health officials. Section 602a lists the duties of local health officers.

in its analysis of the § 1983 claims against the Town. (*See* Doc. 116 at 6.) The Town's supplemental memorandum refers to that prior briefing in the course of arguing that no Town "employee" violated Plaintiff's Article 4 or 11 rights. (Doc. 122 at 5 n.5.) Plaintiff maintains that the Town selected Mr. Mayfield as its LHO and "designated" Mr. Mayfield as its "agent," delegating to him "most, if not all, of its authority to issue and enforce health orders." (Doc. 123 at 4.)

The parties have not cited—and the court has not found—any Vermont case analyzing whether an LHO is a "municipal officer" for purposes of 24 V.S.A. § 901(a). However, the court finds *Stone v. Town of Middlebury*, No. 105-5-09 Ancv, 2010 WL 3302157 (Vt. Super. Ct. Apr. 7, 2010) (Corsones, J.), to be highly instructive. The Superior Court in that case applied the factors set forth in *Woods v. Rondout Valley Central School District Board of Education*, 466 F.3d 232, 240 (2d Cir. 2006), to analyze whether a Town's local board of health, and an individual acting as LHO, were agencies or arms of the State of Vermont for purposes of Eleventh Amendment immunity. The Superior Court concluded that they were.

Plaintiff notes that *Stone* differs from this case on its facts. In *Stone*, the LHO consulted with the town selectboard, which issued an EHO directing the plaintiff to stop selling an herb known as salvia divinorum. The selectboard subsequently held a special meeting and upheld the EHO. In contrast to *Stone*, Mr. Mayfield did not consult with the Town selectboard before issuing the EHO, and Plaintiff has challenged the selectboard's *failure* to issue an order or otherwise act after Mr. Mayfield issued the EHO. (*See* Doc. 65 at 17, 20.)

The court is not persuaded that those differences could support a conclusion that Mr. Mayfield was acting as a "municipal officer" for purposes of 24 V.S.A. § 901(a). Perhaps most critically, Plaintiff concedes (Doc. 65 at 20 n.17) that:

> Actions taken by local health officers or by any other person given authority by chapters 3 and 11 of this title shall be considered to be actions taken by State employees for the purposes of 3 V.S.A. chapter 29 and 12 V.S.A. chapter 189 if such actions occurred within the scope of such person's duties."

18 V.S.A. § 624. Although § 624 does not specifically state whether such actions are "actions taken by State employees" as opposed to actions by a "municipal officer" under 24 V.S.A. § 901(a), the court follows the *Stone* court's reasoning that § 624 supports the conclusion that an LHO acting in his official capacity is an "arm of the State." Based on that reasoning, 24 V.S.A. § 901(a) does not require the Town to stand as the defendant for Mr. Mayfield's conduct as LHO.[3] It follows that Mr. Mayfield's action in this case was state action. The court has already dismissed the claims against the State of Vermont in this case. (*See* Doc. 17.) And even if the State was a defendant on the claims in Counts I and II, it would be immune from the § 1983 claims under the Eleventh Amendment (*see id.* at 16–17), and the Vermont Tort Claims Act makes jurisdiction in the federal court on the state-law claims unlikely. *See Rheaume v. Tallon*, No. 07-cv-262, 2009 WL 385422, at *3 (D. Vt. 2009) (suggesting "exclusive jurisdiction" provision in 12 V.S.A. § 5601(a) deprived the federal court of subject matter jurisdiction over tort claim against the State). Of course, Mr. Mayfield can be liable in his individual capacity under § 1983. *See State Emp. Bargaining Agent Coal. v. Rowland*, 718 F.3d 126, 137 (2d Cir. 2013) ("[T]he Eleventh Amendment generally does not bar claims for monetary damages against state officials in their individual capacities.").

---

[3] The court has considered Plaintiff's assertions (Doc. 123 at 4) about the Town's involvement in selecting Mr. Mayfield as LHO and the extent of Mr. Mayfield's authority as LHO. As the Superior Court in *Stone* recognized, these facts are relevant to the *Woods* analysis, and some of the *Woods* factors do indeed weigh against finding that an LHO is an arm of the State. But as the Superior Court in *Stone* explained, the LHO can still be an arm of the State even when the *Woods* factors do not all point in the same direction.

### III. Vicarious Liability for Town Police and Fire Marshal's Conduct

Plaintiff asserts that the Town can be vicariously liable for the acts of "its law enforcement and fire marshal," whom Plaintiff contends were "actively supporting the ongoing seizure of Plaintiff's home." (Doc. 123 at 2, 8.) Plaintiff asserts that the Town fire marshal "assisted in the property inspection and supported an order vacating the property"; that he "drafted his own order to vacate the property"; and that he "could have, but did not install smoke and carbon monoxide alarms." (*Id.* at 9 (citing Doc. 97 ¶¶ 19–21, 35).)

The Town maintains that "there is no allegation or evidence that the Fire Marshal[] himself issued the emergency health order which [Plaintiff] claims deprived her of due process and effected a seizure of her property." (Doc. 122 at 4 n.4.) The court agrees on that point. Moreover, even in the light most favorable to Plaintiff, the court concludes that none of the fire marshal's conduct rises to the level of a violation of Article 4 or Article 11.

As to the Town police, when officers responded to the Jericho Street property on May 26, 2022, an officer noted that a neighbor suggested that Mr. Swett "contact the Town Health inspector in an attempt to get the residence condemned." (Doc. 66-4 at 3.) Officer William Furnari testified that the Town police department "follow[s] Mr. Mayfield's lead" if Mr. Mayfield issues an EHO (Doc. 66-27 at 16) and that he (Furnari) interacted with Plaintiff on May 27, 2022, after the EHO was issued based on a report that Plaintiff was at the Jericho Street property and that she "wasn't supposed to be [there]" (*id.* at 8). In an email dated May 28, 2022, a senior Town police officer emailed the entire Town police department advising that Mr. Mayfield had indicated that the Swetts did not have to fix the life safety issues that Mr. Mayfield had identified and that the Swetts would "likely use the health order to run out the clock for an eviction." (Doc. 66-19 at 1.)

8

Plaintiff has identified some evidence that the Town police were aware that the Swetts might have been motivated to recruit Mr. Mayfield to use his authority to accomplish a de facto eviction. But there is no evidence indicating that the Town police were aware of any defect in the EHO or that Mr. Mayfield's conduct was based on a culpable mental state. The court concludes that none of the Town emergency services personnel's conduct rises to the level of a violation of Article 4 or Article 11.

## IV.  Direct Liability

The court rejects Plaintiff's argument that there is an independent basis for direct Town liability under Articles 4 and 11 because "[t]he Town could have, but deliberately failed to, provide post-deprivation process for Plaintiff after the EHO was issued." (Doc. 123 at 5; *see also id.* at 10.) The court has already ruled that the Town was not required "to affirmatively review every EHO or otherwise perform a quality control function for EHOs." (Doc. 116 at 9 n.13.) And there is no evidence that—at least for several months after Mr. Mayfield issued the May 2022 EHO—the Town selectboard was aware that any of the EHOs relating to the Jericho Street property lacked the statement of procedural rights. Mr. Mayfield himself could theoretically have triggered selectboard action under 18 V.S.A. § 126(c), but the undisputed evidence is that he did not realize that any of the relevant EHOs lacked a statement of procedural rights until after this lawsuit was filed in December 2022. (*See* Doc. 92-2 ¶ 93.) Absent a request for a hearing under 18 V.S.A. § 127(c) or any basis to suspect an irregularity with the EHOs at issue, the Town cannot be liable for failing to institute any process that might have qualified as a post-deprivation remedy.

## Conclusion

The remaining portion of the Town's Motion for Summary Judgment (Doc. 57) as to the Article 4 and Article 11 claims against the Town in Counts I and II is GRANTED.

The remaining claims in this case are the claims in Counts I and II against Officer Mayfield.

Dated at Burlington, in the District of Vermont, this 18th day of August, 2025.

/s/ Geoffrey W. Crawford
Judge
United States District Court